UNITED STATES, Appellant

v

ORAN R. COX, Private, U. S. Army, Appellee

22 USCMA 69, 46 CMR 69

No. 25,578

December 1, 1972

*Captain Preston E. Henrichson* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Benjamin P. Fishburne, III,* and *Captain Richard L. Menson.*

*Captain John Howard Shows* argued the cause for Appellee, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Thomas Barry Kingham.*

### Opinion of the Court

DUNCAN, Judge:

This case is before us on three questions certified by the Acting Judge Advocate General.

The Court of Military Review held that pursuant to a pretrial agreement the convening authority must suspend certain portions of appellee's sentence even though he was guilty of post-trial misconduct. We find this result correct.

Before trial, Cox entered into a pretrial agreement with the convening authority whereby in exchange for his plea of guilty the convening authority agreed to suspend a bad-conduct discharge, if adjudged, and any confinement included in the sentence. It was further agreed that the period of suspension for both forms of punishment would be six months.

In accordance with his plea, the appellee was convicted on January 27,

1972, by a military judge sitting alone as a special court-martial, of stealing $160.00 from the locker of another soldier, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was sentenced to a bad-conduct discharge, confinement at hard labor for two months, and forfeiture of $125.00 pay per month for two months.

In his post-trial review, the staff judge advocate opined that the convening authority was not required to abide by the pretrial agreement because of three assaults committed by the appellee subsequent to his trial but prior to the convening authority's action. Based on this advice on March 16, 1972, the convening authority approved the sentence, as adjudged.

The Court of Military Review approved the findings of guilty but determined as a matter of law that the pretrial agreement required the convening authority to suspend portions of the sentence. The court then reassessed, affirming only so much of the sentence as provides for a bad-conduct discharge, and suspended execution of the discharge until September 15, 1972, with a provision for automatic remission.

I. Did the Court of Military Review err in its determination that the convening authority was required to suspend the sentence despite the post-trial misconduct of the accused?

■ We are unable to adjudge that the pretrial agreement carries with it an implied condition that the Government will be bound only if the appellee behaves well.

In United States v Franklin, 41 CMR 431, 435 (ACMR 1969), Senior Judge Stevens well states his sentiment, which we find logical, as follows:

". . . [W]e hesitate to hold that appellant impliedly agreed with the convening authority . . . that his conduct would be 'good' between the date of trial and that of completion of board of review action on his case. There are several reasons for our conclusion. . . . What standard of 'goodness,' then, should we decree appellant's conduct must attain so as

to qualify as a fairly inferable term of his agreement? This is at least potentially a difficult question to answer. . . . And this sort of question is the precise reason for the requirement of the Article 72 hearing, which is calculated to enable the convening authority intelligently to evaluate the probationer's continuing rehabilitation potential.

". . . The convening authority, who reasonably may be assumed to have occupied a superior negotiating position, undertook in advance to suspend and later remit a portion of appellant's sentence in return for his agreement to plead guilty. If his confidence in appellant was misplaced, . . . is it not more just that the command should bear the consequences of his error than that appellant should suffer double punishment?

"Finally, as a matter of sound policy and principle, we are loath to rewrite a pretrial agreement between an accused person and his convening authority."

The face of the agreement in the instant case (Appellate Exhibit 1) specifically sets forth those events triggering avoidance of the agreement. They are as follows:

"I understand that this agreement will be automatically cancelled upon the happening of any of the following events:

1. Failure of the agreement with the Trial Counsel on the contents of the stipulation of facts;

2. The withdrawal by either party from the agreement prior to trial;

3. The changing of my plea by anyone during trial from guilty to not guilty;

4. The refusal of the court to accept my plea of guilty."

It is quite clear that the terms of this agreement do not express a condition which requires post-trial good conduct to effectuate the agreement. We reject any interpretation that produces an implied covenant or condition of

good behavior present in the pretrial agreement.

Oftentimes, the general rules of contract law applicable to the determination of whether a condition or a covenant is to be implied are somewhat obscure and difficult in practice. For example, *compare:*

"A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used and external facts, such as the surrounding circumstances; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face." [Volume 17A, Corpus Juris Secundum, Contracts, § 328.]

*with:*

"However, generally, implied covenants are not favored in the law. Hence, in order that an unexpressed term may be implied, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties; that is, it must appear that the implied obligation was so clearly within the contemplation of the parties that they deemed it unnecessary to expressly stipulate with reference thereto, or it must appear that it is necessary to infer such an obligation to effectuate the full purpose of the contract. . . ." [Volume 17A, Corpus Juris Secundum, Contracts, § 328.]

The host of implications of contracts common to the marketplace have no counterparts in criminal law. Since modern day administration of justice recognizes bargains for pleas as a judicial way of life,[1] the better rule demands maximum clarity; therefore, implications are disfavored.

In the pretrial negotiations, the convening authority occupies a strong bargaining position. Frequently the convening authority's motive for consummation of the deal is a grant of clemency. However, the convening authority, as a bargainer, also benefits from such an agreement by his command not having to conduct a contested court-martial. The bargaining street is two-way, not one-way. We cannot find merit in appellate Government counsel's theory that the convening authority's pretrial agreement participation is only a matter of clemency and the bargain is only the incidental mechanism which carries clemency.

This Court held in United States v Veteto, 18 USCMA 64, 39 CMR 64 (1968), that a pretrial agreement will be enforced based upon the wording of the agreement, and where the intention of both parties at the time of the agreement is clear, the agreement will be upheld.[2] See also United States v Stovall, 16 USCMA 291, 36 CMR 447 (1966); United States v Hamill, 8 USCMA 464, 24 CMR 274 (1957).

II. Did the Court of Military Review exceed its authority when it acted to suspend the sentence?

Under Article 66(c), Code, supra, 10 USC § 866, a Court of Military Review "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds *correct in law* and fact and determines, on the basis of the entire record, should be approved." (Emphasis supplied.)

Additionally, paragraph 100a, Manual for Courts-Martial, United States, 1969 (Revised edition), provides that a Court of Military Review "has generally the same powers with respect to modification of a sentence as does the convening authority . . . but it does not have authority to suspend a sentence or any part thereof." This Manual provision apparently is based upon the decision in United States v Simmons, 2 USCMA 105, 6 CMR 105 (1952). United States v Prow, 13 USCMA 63, 32 CMR 63 (1962); United States v

---

[1] Santobello v New York, 404 US 257, 30 L Ed 2d 427, 92 S Ct 495 (1971).

[2] It should be noted that, in the case before us, we are not called upon to decide the matter of the enforceability of an express provision in a pretrial agreement requiring good behavior.

Russo, 11 USCMA 352, 29 CMR 168 (1960); and United States v Estill, 9 USCMA 458, 26 CMR 238 (1958). See Analysis of Contents, Manual for Courts-Martial, United States, 1969, chapter XX, Appellate Review—Execution of Sentences, paragraph 100a; Department of the Army Pamphlet Number 27–2, July 28, 1970, at 20–1.

Rather than suspending a part of the sentence as a matter of sentence appropriateness, as in *Simmons,* in the case before us the Court of Military Review entered the sentence as legally correct. We see no evil to avoid in this procedure since it in no way lodges the general powers to suspend in that court. The power is and has been only that of those authorized to suspend.

In the instant case, the convening authority's sentence action is erroneous as a matter of law because it did not provide for suspension of the bad-conduct discharge as provided in the pretrial agreement. The Court of Military Review could have corrected the error by returning the record to the convening authority for new action. As the convening authority is bound by the mandate of the appellate court, the only action the convening authority could then take would be to suspend. Cf. United States v Stevens, 10 USCMA 417, 27 CMR 491 (1959).

United States v Braxton, 16 USCMA 504, 37 CMR 124 (1967), illustrates this Court's concern with conserving judicial time and bringing a case to a close as speedily as possible. There, in his action on this case, the convening authority did not dismiss a particular charge. Concluding that the convening authority *intended* to dismiss the charge, the Court accomplished that action for him. The Court presumed that the convening authority intended to do what was recommended to him in the post-trial advice in dismissing the charge, which the convening authority had not dismissed. We said, at page 505:

". . . We are, therefore, left with an abiding conviction that the general court-martial authority's failure to dismiss Charge II and its specification was entirely inadvertent. In view of the sentence, and in the interest of conserving judicial time and effort, we can appropriately correct the defect."

In other words, this Court, using its authority to review on matters of law, accomplished in *Braxton* that which the convening authority had intended to accomplish. In the case before us, the Court of Military Review properly utilized its authority in doing that which the convening authority was legally bound to do.

III. Must the convening authority direct an Article 72 type hearing when he does not follow a pretrial agreement to suspend a bad-conduct discharge because of the accused's misconduct subsequent to trial but prior to the action on the record?

The briefs and arguments of counsel discuss the above question of law. Reaching that certified question is not demanded. United States v Aletky, 16 USCMA 536, 37 CMR 156 (1967).

By its action on April 20, 1972, the Court of Military Review suspended the execution of the bad-conduct discharge "until 15 September 1972, at which time, unless the suspension is sooner vacated, it shall be remitted without further action." Since that date has now passed and in light of the action we take in this case, the inquiry is academic. United States v Aletky, supra; United States v Bedgood, 12 USCMA 16, 30 CMR 16 (1960). See also United States v Anderson, 14 USCMA 515, 34 CMR 295 (1964).

The judgment of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN, concur.