UNITED STATES, Appellee

v.

Richard M. DEAN, Private
U.S. Army, Appellant

No. 08-0431

Crim. App. No. 20051336

United States Court of Appeals for the Armed Forces

Argued December 16, 2008

Decided March 12, 2009

ERDMANN, J., delivered the opinion of the court, in which in
which EFFRON, C.J., and STUCKY and RYAN, JJ., joined.  BAKER,
J., filed a separate dissenting opinion.

Counsel

For Appellant:  Captain Richard P. Pizur (argued);  Lieutenant
Colonel Matthew M. Miller, Lieutenant Colonel Mark Tellitocci,
and Captain Shay Stanford (on brief); Colonel Christopher J.
O'Brien, Lieutenant Colonel Steven C. Henricks, Major Teresa L.
Raymond, and Captain Sean F. Mangan.

For Appellee:  Captain Mark E. Goodson (argued); Colonel Denise
R. Lind, Lieutenant Colonel Mark H. Sydenham, and Major Lisa L.
Gumbs (on brief); Lieutenant Colonel Francis C. Kiley.

Military Judge:  David L. Conn

**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Private Richard M. Dean was charged with arson, larceny, making a false official statement, and burglary. The parties entered into a pretrial agreement that did not include a misconduct provision authorized in Rule for Courts-Martial (R.C.M.) 705(c)(2)(D). On the eve of trial, the convening authority withdrew from the pretrial agreement because Dean would not agree to modify the stipulation of fact to include new acts of alleged misconduct. Dean moved to compel enforcement of the pretrial agreement. The military judge conducted a hearing and allowed the convening authority to withdraw.

Dean subsequently entered pleas of not guilty to all charges and specifications and was convicted of several offenses by the military judge. His adjudged and approved sentence included a term of confinement that exceeded the limit set out in the pretrial agreement by sixteen months. We granted review to determine whether the military judge erred in permitting the convening authority to withdraw from the pretrial agreement. 67 M.J. 45 (C.A.A.F. 2008). We hold that under the facts of this case the convening authority did not have a right to withdraw under R.C.M. 705(d)(4)(B), and we therefore reverse the United States Army Court of Criminal Appeals.

## Background

Dean was arraigned on July 8, 2005. He deferred pleas and requested a military judge-alone trial. On July 21, 2005, the defense filed a motion for pretrial confinement credit under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2000). On August 12, 2005, defense counsel notified the Government of his intention to call sixteen witnesses at trial.

Dean submitted an Offer to Plead Guilty and stipulation of fact to the convening authority on August 29, 2005. Paragraph 1 of the Offer to Plead Guilty required Dean to perform as follows: plead guilty to all but one specification; enter into a written stipulation of fact with the trial counsel as to the circumstances of the offense; elect to be tried by military judge alone; waive the July 21, 2005, motion for pretrial confinement credit; waive the personal appearance of three specific military witnesses; and request that the Government produce no more than two non-local defense witnesses to testify at the court-martial.

Paragraph 2 of the Offer to Plead Guilty stated that "[i]n exchange for my actions as stated in paragraph 1, above, the convening authority agrees to take the actions specified in Appendix 1 to this offer." Appendix 1, the quantum portion of the agreement, stated that the convening authority would not approve any confinement in excess of twenty-four months.

Paragraph 3 of the Offer to Plead Guilty addressed cancellation of the agreement as follows:

> I understand that this agreement may be cancelled upon the happening of any of the following events:
>
> a. My failure to arrive at an agreement with the trial counsel on the contents of the stipulation of fact, or any modification of the stipulation without my consent.
>
> b. My withdrawal from this agreement at any time before sentence is announced.
>
> c. Withdrawal from the agreement by the convening authority before I begin performance of promises contained in paragraph 1 of this agreement, upon my failure to fulfill any material promise or condition contained in paragraph 1 of this agreement or when inquiry by the military judge discloses a disagreement as to a material term in the agreement.

As noted, the agreement did not contain any misconduct provisions authorized in R.C.M. 705(c)(2)(D).

Contemporaneous with the Offer to Plead Guilty, Dean submitted a stipulation of fact to the convening authority which had been executed by Dean, his defense counsel and the trial counsel. The convening authority accepted and signed the Offer to Plead Guilty on September 14, 2005. On October 3, 2005, defense counsel submitted a revised witness list notifying the Government that the only witnesses he intended to call were two local civilians.

On October 11, 2005, the eve of trial, trial counsel learned that there was probable cause to believe Dean had recently committed additional larcenies and made a false

4

official statement.  Trial counsel wanted to modify the stipulation of fact to include this additional information as evidence in aggravation.  Dean and his defense counsel would not agree to the modification, which resulted in the convening authority's withdrawal from the pretrial agreement.

Dean moved for enforcement of the pretrial agreement arguing that because he began to perform the promises contained in the agreement, the Government did not have the right to withdraw.  The military judge conducted a hearing on November 7, 2005, and denied the defense's motion on the grounds that there was no evidence to show that Dean had detrimentally relied on the pretrial agreement or that the Government sought to withdraw for an illegitimate or arbitrary reason.[1]

Dean proceeded to a military judge-alone trial on November 9, 2005, without a pretrial agreement.  He entered pleas of not guilty to all charges and specifications but was convicted of several offenses by the military judge.  Dean was sentenced to a bad-conduct discharge, forfeitures of all pay and allowances,

---

[1] R.C.M. 705 (d)(4)(B) provides that a convening authority may withdraw from a pretrial agreement for the following reasons: "any time before the accused begins performance of promises contained in the agreement"; "failure by the accused to fulfill any material promise or condition in the agreement"; "when inquiry by the military judge discloses a disagreement as to a material term in the agreement"; and "if the findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review."  Neither of the

and confinement for forty months.  The adjudged length of confinement was sixteen months greater than the limit set by the earlier pretrial agreement.  The convening authority approved the sentence as adjudged.  The United States Army Court of Criminal Appeals summarily affirmed.  United States v. Dean, No. ARMY 20051336 (A. Ct. Crim. App. Mar. 12, 2008) (per curiam).

## Discussion

Dean argues that under both R.C.M. 705(d)(4)(B) and the provisions of the pretrial agreement, the right of the convening authority to withdraw from the pretrial agreement terminated when he began performance.  While Dean disputes that a showing of detrimental reliance is required under R.C.M. 705(d)(4)(B), he argues that the convening authority's withdrawal was to his detriment in regard to the production of witnesses.  Dean also argues that because the Government would not consent to a conditional guilty plea to preserve the withdrawal issues for appeal, he lost a meaningful opportunity to plead guilty to some offenses.  The Government responds that the convening authority's withdrawal from the pretrial agreement was proper on four grounds:  (1) Dean did not begin performance under R.C.M. 705(d)(4)(B) or under paragraph 3.c. of the agreement and there was no detrimental reliance; (2) inquiry by the military judge

grounds relied upon by the military judge are found in that provision.

disclosed a disagreement as to a material term in the agreement;
(3) Dean violated an implied obligation of good faith embodied
in the agreement; and (4) Dean failed to arrive at an agreement
with trial counsel to modify the stipulation in violation of
paragraph 3.a. of the agreement.

Interpretation of a pretrial agreement and interpretation
of provisions of the R.C.M. are questions of law that this court
reviews de novo. United States v. Hunter, 65 M.J. 399, 401
(C.A.A.F. 2008). We conclude that under the facts of this case
none of the Government's asserted grounds provide a valid basis
for withdrawal. We address each of the Government's asserted
grounds in turn.

1. Whether Dean began performance of the promises in
   the pretrial agreement.

In military practice, the convening authority's rights to
withdraw are set out in R.C.M. 705(d)(4)(B) and frequently, like
here, are reflected in the terms of the pretrial agreement
itself. R.C.M. 705(d)(4)(B) provides in part that the
"convening authority may withdraw from a pretrial agreement at
any time before the accused begins performance of promises
contained in the agreement." Dean's pretrial agreement
acknowledges this right in paragraph 3.c. with the following
language: "I understand that this agreement may be canceled
upon the happening of any of the following events . . .

Withdrawal from the agreement by the convening authority before I begin performance of promises contained in paragraph 1 of this agreement . . . ."

Paragraph 1 of the agreement contains six separate promises to be performed by Dean. He contends that he began performance of these promises by entering into a stipulation of fact with the trial counsel, by submitting a request to be tried by military judge alone, and by waiving the personal appearance of certain witnesses. The Government responds that an accused's performance does not "begin," for purposes of a pretrial agreement, until the accused enters a guilty plea. According to the Government, because Dean had not yet entered a guilty plea, he had not yet begun to perform. The Government also argues that because Dean failed to "begin" performance, he must show detrimental reliance to be entitled to specific performance of the agreement.

In light of the plain language of R.C.M. 705(d)(4)(B), the Government's position is untenable. The rule does not state, as it easily could have, that the convening authority may withdraw from a pretrial agreement at any time before the accused enters a guilty plea. Rather, it clearly states that the convening authority may withdraw from the agreement at any time before the accused "begins performance of promises contained in the agreement." The drafters chose the plural of "promise," so

8

while a promise to plead guilty is certainly a relevant consideration, it is not the only promise which can trigger the "begins performance" criteria.[2]

Furthermore, the Government's position directly conflicts with the persuasive guidance provided by the Drafters' Analysis of R.C.M. 705(d)(4)(B), which states: "Note that the beginning of performance is not limited to entry of a plea. It would also include testifying in a companion case, providing information to Government agents, or other actions pursuant to the terms of an agreement." Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-41 (2008 ed.) [hereinafter Drafters' Analysis]; see United States v. Toy, 65 M.J. 405, 410 n.3 (C.A.A.F. 2008) (recognizing the Drafters' Analysis of M.R.E. 317 as persuasive authority).

---

[2] As support for its position the Government relies primarily on two cases from this court, United States v. Manley, 25 M.J. 346, 350 (C.M.A. 1987), and United States v. Kitts, 23 M.J. 105, 108 (C.M.A. 1986). Both cases are inapposite. In Manley, we noted that "the accused commenced performance by entering pleas of guilty pursuant to the written pretrial agreement before the Government took any action to withdraw" without mentioning that entry of a stipulation also occurred pursuant to the terms of the agreement. 25 M.J. at 350. Relying on entry of a guilty plea to show that performance began is not the same as holding that entry of a guilty plea is the only way to begin performance. In Kitts, while addressing allegations that unlawful command influence impacted the pretrial agreement process, we generalized in dicta that "the Government will usually be protected by the power to withdraw from a plea agreement up until the plea is entered." 23 M.J. at 108. Kitts did not discuss or cite R.C.M. 705(d)(4)(B) and has no

In this case, Dean either performed or began to perform several of the promises listed in the agreement before the convening authority announced his withdrawal on October 11, 2005: Dean elected trial by military judge alone on July 8, 2005; he entered into a stipulation of fact with trial counsel as to the circumstances of the offense on August 29, 2005; and on October 3, 2005, he filed an amended witness list which complied with two separate promises he made regarding the production of witnesses. The convening authority's right to withdraw "any time before the accused begins performance of promises contained in the agreement" therefore terminated before he announced his withdrawal from the agreement. R.C.M. 705(d)(4)(B).[3]

> 2. Whether the record demonstrates that inquiry by the military judge disclosed a disagreement as to a material term in the agreement under R.C.M. 705(d)(4)(B).

In addition to allowing the convening authority to withdraw from a pretrial agreement at any time before the accused begins

---

application to this case. To the extent the generality conflicts with R.C.M. 705(d)(4)(B), we reject it.

[3] In reaching this conclusion, we need not address whether Dean detrimentally relied on the actions he took to comply with his promises in the agreement. The Government argues that Dean must show detrimental reliance only if he did not "begin" performance of the agreement. See Shepardson v. Roberts, 14 M.J. 354, 358 (C.M.A. 1983). As we have found that Dean did "begin" performance, the issue of the continuing viability, if any, of the doctrine of detrimental reliance on R.C.M. 705(d)(4)(B) is reserved for a future case.

performance, R.C.M. 705(d)(4)(B) also provides that the convening authority may withdraw "when inquiry by the military judge discloses a disagreement as to a material term in the agreement." The Government contends that since the parties litigated the meaning of the phrase "before I begin performance" at the trial level, that action reflected a "disagreement" sufficient to trigger the convening authority's right to withdraw under this component of R.C.M. 705(d)(4)(B). The Government makes this argument on appeal despite the fact that it did not rely on that basis for withdrawal at the trial level. In support, the Government cites United States v. Williams, 60 M.J. 360 (C.A.A.F. 2004).

The Government's reliance on Williams is misplaced. In his pretrial agreement, Williams had promised to make restitution to his victims and even before trial the parties disagreed as to whether that restitution had to be made before Williams entered his plea. Id. at 361. At trial Williams had not made restitution and the convening authority withdrew from the agreement under the "failed to fulfill a material promise or condition" component of R.C.M. 705(d)(4)(B). Id. On appeal to this court, we held that we did not need to determine whether Williams had failed to "fulfill a material promise or condition" as the inquiry conducted by the military judge clearly

11

United States v. Dean, No. 08-0431/AR

established "a disagreement as to a material term in the agreement." Id. at 363.

Although the government in Williams did not rely on the "disagreement of a material term" component of R.C.M. 705(d)(4)(B) at the trial level, the military judge noted that the disagreement between the parties arose from the language of the agreement itself and acknowledged that the justification for the government's withdrawal was based on that disagreement: "It would have been much better had the -- had it [when restitution had to be made] been spelled out in writing in the Offer to Plead Guilty, that it [restitution] was before trial and not -- then we wouldn't have this issue at all." Id. at 361. The parties' positions at the hearing together with these remarks clearly reflected an inquiry in which the military judge had ascertained an underlying disagreement between the parties as to what the negotiated term meant, as well as the material nature of that term. Id. at 361-63.

We do not have the same situation in this case. Here the inquiry before the military judge focused on the convening authority's right to withdraw before an accused begins to perform. As discussed in the preceding section, this right is conveyed to the convening authority as a matter of law under R.C.M. 705(d)(4)(B). See supra pp. 8-10. While the parties included this right as a term in the pretrial agreement, neither

12

party asserts on appeal nor does the record of trial suggest that use of the phrase "before I begin performance" was intended to convey rights beyond what the rule itself conveys. Furthermore, at no point during the hearing or in his ruling did the military judge address whether the "begin performance" term was material to the agreement.

As such, neither the purpose nor the result of the military judge's inquiry in this case was to ascertain whether the parties disagreed as to a material term. On the contrary, the hearing and the military judge's ruling focused on interpretation of the rule itself, which is a legal rather than a factual inquiry. Furthermore, unlike in Williams where the parties' disagreement over the restitution clause instigated the convening authority's withdrawal, the record in this case demonstrates that the parties' disagreement over the "begin performance" term had nothing to do with the Government's decision to withdraw. Trial counsel confirmed during the hearing that the only reason the Government withdrew was because Dean refused to modify the stipulation of fact to include additional misconduct.

In this case, the hearing before the military judge does not reflect an inquiry by the military judge which "disclose[d] a disagreement as to a material term in the agreement" under R.C.M. 705(d)(4)(B). Accordingly, the Government cannot rely on

this component of the rule to justify the convening authority's withdrawal on appeal.

We recognize that the discussion in Williams could have better explained the basis for our conclusion that "[t]he inquiry conducted by the military judge clearly established 'a disagreement as to a material term in the agreement.'" Williams, 60 M.J. at 363. In reviewing that holding and to avoid confusion in the future, we now make clear that in order for the government, on appeal, to rely on the "disagreement as to a material term" component of R.C.M. 705(d)(4)(B) to justify its withdrawal from a pretrial agreement, the record must reflect either that the government relied on that basis at trial or that the military judge made a finding to that effect.

3. Whether there was an implied obligation of good faith not to commit additional misconduct embodied in the pretrial agreement.

The Government, citing United States v. Koopman, 20 M.J. 106, 110 (C.M.A. 1985), argues that if an individual commits a crime while under the terms of a pretrial agreement, he violates an implied obligation of good faith and the government has a right to withdraw from the pretrial agreement. The Government misreads Koopman, which involved a "different type of pretrial agreement," namely, an "oral promise of immunity." 20 M.J. at 109. One critical condition of the agreement was that Koopman pay restitution to cover sums he had written in bad checks. Id.

14

at 107.  This court upheld the military judge's determination that on the specific facts of that case there were two implicit terms in the parties' agreement:  (1) that Koopman would make restitution within a reasonable time period after his discharge; and (2) that the parties act in good faith to accomplish the objectives of the contract.  Id. at 110-11.

Before Koopman was discharged and restitution was made, he went absent without leave for eight months, "assur[ing] that his discharge would be substantially delayed and that restitution to the Navy Exchange would not take place promptly."  Id. at 111. This court determined that Koopman violated the implicit terms of the parties' agreement and the government therefore had a right to withdraw.  Id.  Contrary to the Government's interpretation, Koopman does not stand for the proposition that every appellant who commits additional acts of misconduct while a pretrial agreement is pending violates an implied obligation of good faith embodied in the agreement.

In United States v. Cox, 22 C.M.A. 69, 70, 46 C.M.R. 69, 70 (1972), this court long ago stated:  "We are unable to adjudge that the pretrial agreement carries with it an implied condition that the Government will be bound only if the appellee behaves well."  We see no reason to depart from that precedent here. R.C.M. 705(c)(2)(D) allows the government to include as a condition of the pretrial agreement an express "promise to

conform the accused's conduct to certain conditions of probation before action by the convening authority." The Government in this case chose not to avail itself of the opportunity to include a misconduct provision in Dean's pretrial agreement and that leaves the convening authority without recourse to cancel the pretrial agreement on the grounds of alleged acts of new misconduct. We therefore reject the Government's contention that the convening authority had a right to withdraw because Dean violated an implied obligation of good faith.

4. Whether Dean's refusal to include additional acts of misconduct in the stipulation of fact violated the terms of the pretrial agreement.

Paragraph 1.b. of the pretrial agreement required Dean to "enter into a written stipulation of fact with the trial counsel as to the circumstances of the offense." Under paragraph 3.a., the pretrial agreement may be cancelled upon "[m]y [Dean's] failure to arrive at an agreement with the trial counsel on the contents of the stipulation of fact, or any modification of the stipulation without my [Dean's] consent." The parties reached agreement on the stipulation of fact on August 29, 2005. The Government argues that Dean's subsequent refusal to modify the stipulation of fact to include alleged acts of new misconduct permitted the convening authority's withdrawal under paragraph 3.a. Again, we disagree.

While the language in paragraph 3.a. of the pretrial agreement as to modification of the stipulation of fact is not a model of clarity, the language of paragraph 1.b. is clear -- Dean agreed to enter into a written stipulation as to the "circumstances of the offense." Paragraph 1.b. makes no reference to the facts or circumstances of any misconduct other than that charged in the offense. As such, the modification proposed by the Government to include recent acts of alleged misconduct in the stipulation is outside the scope of the parties' agreement. Because the pretrial agreement does not include a misconduct provision authorized in R.C.M. 705(c)(2)(D), the convening authority cannot rely on alleged acts of new misconduct to justify its withdrawal. See supra p. 16.

## Conclusion

For all the above reasons, we conclude that the convening authority did not properly withdraw from the pretrial agreement in this case. Dean has requested that this court grant relief by affirming only so much of the sentence as includes confinement for twenty-four months, forfeiture of all pay and allowances, and a bad-conduct discharge. As the convening authority was bound under the terms of the pretrial agreement to disapprove all confinement in excess of twenty-four months, we find that the requested relief is appropriate.

United States v. Dean, No. 08-0431/AR

<u>Decision</u>

To the extent that the decision of the United States Army Court of Criminal Appeals affirmed a sentence that included confinement in excess of twenty-four months, the decision is reversed.  The remainder of the findings and that portion of the sentence extending to a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for twenty-four months are affirmed.

BAKER, Judge (dissenting):

I disagree with the majority on two counts. First, the majority concludes that the convening authority's right to withdraw from the plea agreement terminated because Appellant began performance of the agreement. In particular, he elected trial by military judge alone on July 8, 2005, he entered into the stipulation with the trial counsel on August 29, 2005, and he filed his witness request on October 3, 2005. Second, and more importantly, the majority concludes that the language of the pretrial agreement did not permit amendment to address Appellant's subsequent misconduct because the agreement did not include a misconduct clause. The majority is correct to focus on preferred outcomes, but wrong to conclude that because the agreement might have been drafted better, the parties should not be bound by its terms.

A. Performance Under the Agreement

With respect to the military judge alone request and Appellant's entry into the stipulation, the record and the majority's chronology both indicate that these two events occurred before the convening authority entered into the agreement on September 14, 2005. Thus, it is not clear how Appellant could, as a matter of military or contract law, begin performing on a contract that had not yet been signed by the convening authority and that had not entered into force. It

appears that at the time Appellant submitted his offer for a plea agreement, he was essentially promising to do that which he had already done, in anticipation of an agreement.

    B.  The Proposed Modification of the Stipulation

    The stipulation of fact is inextricably related to section 3.a. of the agreement setting forth circumstances allowing for cancellation of the agreement.  Section 3.a. states:

> I understand that this agreement may be canceled upon the happening of any of the following events:
>
> a.  My failure to arrive at an agreement with the trial counsel on the contents of the stipulation of fact, or any modification of the stipulation without my consent.

On its face, this provision indicates that the parties anticipated the possibility that one or both parties might seek modification of the agreement prior to trial.  If so, the parties would have to agree on any modification.  A stipulation is, by definition, an agreement between the parties.  See Rule for Courts-Martial (R.C.M.) 811.  Thus, this provision does little more than state a truism; however, it makes clear that the parties anticipated such an event.  The text of the agreement does not limit the basis on which a modification might be sought.  Moreover, according to the plain language of the agreement, any modification to the stipulation on which the parties could not agree would cancel the agreement.

2

As a result, had the convening authority not withdrawn from the agreement and instead forged ahead with the modification notwithstanding the accused's refusal to accept it, the military judge would have been unable to accept the stipulation at trial as a matter of law because the accused would not have been in agreement with it. R.C.M. 811(c) ("Before accepting a stipulation in evidence, the military judge must be satisfied that the parties consent to its admission."). Likewise, had the convening authority not withdrawn and not attempted to modify the stipulation, the Government, when asked by the military judge at trial whether it wished to be bound by the stipulation, presumably would have expressed its refusal to be bound by a stipulation with which they no longer agreed.

Nonetheless, the majority concludes that the cancellation provision does not encompass the Government's proposed modification to address subsequent misconduct because most plea agreements include an express misconduct provision. United States v. Dean, __ M.J. __ (17-18) (C.A.A.F. 2009) ("As such, the modification proposed by the Government to include recent acts of alleged misconduct in the stipulation is outside the scope of the parties' agreement. Because the pretrial agreement does not include a misconduct provision authorized in R.C.M. 705(c)(2)(D), the convening authority cannot rely on alleged acts of new misconduct to justify its withdrawal."). This

agreement did not.  But, here, the majority conflates what is preferred with what is legally required.  In other words, the majority suggests that subsequent misconduct can only be addressed through resort to a subsequent misconduct provision, even if the language the parties agree upon permits otherwise.

Of course, the parties to a plea agreement that contains a stipulation are free to propose or make any modifications they see fit before the agreement is accepted by the military judge. R.C.M. 811(a) ("[t]he parties may make an oral or written stipulation to any fact") (emphasis added); United States v. Kazena, 11 M.J. 28, 31 (C.M.A. 1981) (the military judge at a court-martial is responsible for the immediate supervision of pretrial agreements in the military justice system).  Even if one accepts the majority's position that the promise to enter into the stipulation was limited to the circumstances of the charges, any modifications referred to in the cancellation provision were not so limited.  There is no text in the agreement limiting any subsequent modification to the stipulation.

Moreover, and significantly, this is not a case where the Government has used its relative bargaining position to compel an accused to accept an agreement that favors only one side. The military judge found as a matter of fact that Appellant had drafted the terms of the agreement, including the cancellation

provision.  Neither the United States Army Court of Criminal Appeals nor the majority has found this finding clearly erroneous.  Indeed, on its face, the cancellation provision in question is intended to protect the accused, making express what is implied in the law:  either party could seek amendment to the agreement, but the Government could not change the agreement without Appellant's consent.

Unusual facts can make bad law.  The Appellant chose to enter into a stipulation of fact prior to reaching an agreement with the convening authority.  In addition, the terms of the agreement did not include a subsequent misconduct provision as many agreements do.  This is not wholly surprising as the language was drafted by defense counsel.  However, even without an express subsequent misconduct provision, the plain terms of the agreement clearly permit subsequent and agreed upon modifications to the stipulation and permit withdrawal by either party when a proposed modification is not agreed upon.  These terms are consistent with public policy and are not the product of Government overreaching.

In my view, whether the convening authority unilaterally withdrew or not, when Appellant and his defense counsel refused the proposed modification to the stipulation, the agreement was cancelled by operation of its terms.  Any actions on Appellant's part from that point forward cannot be considered performance of

an agreement that no longer existed.  As a result, I respectfully dissent.