# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40600

————————————

### UNITED STATES
*Appellee*

**v.**

### Mario D. MOORE

Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 December 2024

————————————

*Military Judge*: Lauren M.D. Torczynski.

*Sentence*: Sentence adjudged 17 January 2024 by GCM convened at Fort George G. Meade, Maryland. Sentence entered by military judge on 8 April 2024: Bad-conduct discharge, confinement for 11 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Matthew L. Blyth, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire

Before RICHARDSON, KEARLEY, and ORTIZ, *Appellate Military Judges*.

Judge ORTIZ delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ORTIZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1] Consistent with the plea agreement, the Government withdrew and dismissed specifications under Articles 107, 119b, 120, 128, and 128b, UCMJ,[2] following acceptance of Appellant's guilty plea.[3] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 11 days, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises three issues on appeal: (1) whether his plea agreement that required a bad-conduct discharge rendered his court-martial sentencing proceeding an "empty ritual" that violated public policy; (2) whether Appellant's sentence was inappropriately severe; and (3) whether 18 U.S.C. § 922 was unconstitutional as applied to Appellant because the Government cannot demonstrate that barring possession of firearms is "consistent with the nation's historical tradition of firearm regulation."[4] After carefully considering issue (3) and for the reasons explained in *United States v. Vanzant*, 84 M.J. 671, 680–81 (A.F. Ct. Crim. App. 2024), *rev. granted*, __ M.J.__, No. 24-0182/AF, 2024 CAAF LEXIS 640 (C.A.A.F. 17 Oct. 2024), and *United States v. Lepore*, 81 M.J. 759, 762–63 (A.F. Ct. Crim. App. 2021) (en banc), we conclude this issue warrants neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to the remaining issues, we find no error

---

[1] All references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.). Unless otherwise noted, all other references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] 10 U.S.C. §§ 907, 919b, 920, 928, 928b.

[3] For the Government's oral motion to dismiss the remaining charges, neither the military judge nor the government counsel indicated that their withdrawal was to be "with prejudice" but noted that they would be withdrawn in accordance with the plea agreement, which provided that dismissal would be "with prejudice." The entry of judgment and the charge sheet both indicate these specifications were withdrawn and dismissed with prejudice.

[4] Quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022).

that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.[5]

## I. BACKGROUND

The basis for the Article 128, UCMJ, charge to which Appellant pleaded guilty involves an altercation between Appellant and his wife, YC, in January 2021. Prior to the charged offense Appellant and YC engaged in "play fighting" where they would consensually wrestle and push each other. Beginning in March 2019, YC became less interested in "play fighting." On one morning in January 2021, Appellant initiated a "play fight" in their shared bedroom. YC informed him that she did not want to "fight" with him because she was not as strong as she used to be. Nonetheless, Appellant playfully grabbed her arm. In response YC told him "No" and pulled her hand away. YC recalled that Appellant said, "[D]on't ever do that again." He then yanked and pulled her arm back. At some point, Appellant grabbed YC's wrist tightly while she tried to pull her wrist back, and she heard a cracking noise from her wrist that felt as if her wrist may have been pulled from its socket. YC then tried to "mend" her own wrist by attempting to put it back in the socket. Over the next few days, YC informed Appellant that she was in pain and asked him to take her to get medical treatment, but Appellant never did.[6] YC suspected Appellant did not want medical staff to question him about YC's injury. In the absence of proper medical care, YC used a wrist brace provided by Appellant until she no longer needed its support.

After investigation into the above incident and other incidents, Appellant was charged with a series of offenses involving either YC or Appellant's minor son, CM: one specification of false official statement; one specification of child endangerment; one specification of sexual assault; three specifications of assault consummated by a battery; and one specification of domestic violence.[7] On 10 January 2024, Appellant entered into a plea agreement with the convening authority to plead guilty to a single violation of Article 128, UCMJ— assault on YC by grabbing her wrist. In the plea agreement, the parties

---

[5] We note that Attachments 1–4 to the Special Court-Martial Convening Authority Forwarding Memorandum and Exhibit 4 of the Preliminary Hearing Officer Report are contained in the record of trial on Blu-ray discs and not "in a format playable on the factory installed version of Windows Media® player (*e.g.*, WMV, WMA, MPEG, MP3, AVI)" as required by Department of Air Force Manual 51-203, *Records of Trial*, ¶ 2.2.4.2 (21 April 2021). Appellant does not assert prejudice, and we find none.

[6] The record does not reflect whether YC was able to seek medical treatment without Appellant's assistance.

[7] Two additional specifications were dismissed prior to referral.

stipulated that the military judge must enter a sentence that provided minimum confinement of zero days and maximum confinement of 30 days, and that a bad-conduct discharge must be adjudged. The plea agreement specified it placed "no other limitation on the sentence that may be adjudged." The convening authority agreed to dismiss the remaining charges and specifications with prejudice after acceptance of the guilty plea and that no additional charges or specifications would be referred for potential misconduct discovered from already known and available evidence at the time the plea agreement was signed.

At trial, the military judge conducted a full inquiry regarding the plea agreement, including an inquiry into the provision requiring the sentence adjudged to include a bad-conduct discharge. The military judge confirmed that Appellant understood that if the plea agreement were accepted, the military judge, as sentencing authority, would be bound to the sentencing limitations contained in the agreement. When the military judge finished reviewing the plea agreement, she asked trial counsel and trial defense counsel if they concurred with her interpretation of the plea agreement. All counsel confirmed that they agreed, and the military judge accepted the plea agreement.

During the presentencing portion of the court-martial, the Government offered a personal data sheet; a record of individual counseling; a letter of reprimand (LOR); Appellant's unsworn statement from a prior court-martial conviction for three specifications of assault of an Airman in violation of Article 128, UCMJ; the entry of judgment for Appellant's prior court-martial; and Appellant's enlisted performance reports (EPRs). Additionally, during presentencing, YC presented her unsworn victim statement orally and in writing, detailing how Appellant's actions impacted her.

Appellant's trial defense counsel offered six exhibits, including a summation of his military awards and decorations; a slideshow of pictures showing Appellant's career and experiences as a father; three character statements; and a written unsworn statement wherein he related his early life experiences, his military experiences, and the effect that a sentence of confinement would have on his life. Additionally, Appellant's counsel presented testimony from three witnesses, including Appellant's mother, who testified about their experiences with Appellant and his rehabilitation potential. Finally, Appellant made an oral unsworn statement in a question-and-answer format and apologized to YC for his actions relating to the offense.

## II. DISCUSSION

### A. "Empty Ritual"

Appellant argues that the plea agreement requiring a bad-conduct discharge rendered the sentencing proceeding an "empty ritual" that violated public policy.

#### 1. Law

Interpretation of a plea agreement is a question of law that this court reviews de novo. *See United States v. Dean*, 67 M.J. 224, 227 (C.A.A.F 2009) (citation omitted).

An accused and a convening authority may enter into an agreement which includes limitations on the sentence that may be adjudged. Article 53a(a)(1)(B), UCMJ, 10 U.S.C. § 853a(a)(1)(B); Rule for Courts-Martial (R.C.M.) 705(b)(2)(E). A plea agreement which limits the sentence may also contain a specified sentence or portion of a sentence that shall be imposed by the court-martial. Article 53a(a)(1)(B), UCMJ; R.C.M. 705(d)(1)(D).

"This court has adopted the principle that terms in a pretrial agreement are contrary to public policy if they interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process." *United States v. Kroetz,* No. ACM 40301, 2023 CCA LEXIS 450, at *8–9 (A.F. Ct. Crim. App. 27 Oct. 2023) (unpub. op.) (alteration, internal quotation marks, and citation omitted), *rev. denied*, 84 M.J. 417 (C.A.A.F. 2024).

#### 2. Analysis

Different panels of this court have squarely addressed whether a mandatory discharge provision in a plea agreement violates public policy. *See United States v. Conway*, No. ACM 40372 (f rev), 2024 CCA LEXIS 290, at *7–11 (A.F. Ct. Crim. App. 19 Jul. 2024) (unpub. op.); *United States v. Reedy*, No. ACM 40358, 2024 CCA LEXIS 40, at *13–14 (A.F. Ct. Crim. App. 2 Feb. 2024) (unpub. op.); *Kroetz*, unpub. op. at *8–9; *United States v. Walker*, No. ACM S32737, 2023 CCA LEXIS 355, at *2–3 (A.F. Ct. Crim. App. 21 Aug. 2023) (unpub. op.); *United States v. Geier*, No. ACM S32679 (f rev), 2022 CCA LEXIS 468, at *13 (A.F. Ct. Crim. App. 2 Aug. 2022) (unpub. op.), *rev. denied*, 83 M.J. 86 (C.A.A.F. 2022). We find these decisions instructive in this case.

We find that the mandatory bad-conduct discharge provision in Appellant's plea agreement did not render the sentencing proceeding an "empty ritual." As a broad proposition, Appellant argues that the mandatory discharge provision violates public policy because it obstructs the principles of individualized sentencing and stripped the military judge of her discretion. But as previously explained by various panels of this court, such provisions are now allowable

and do not violate public policy. *See, e.g.*, *Conway*, unpub. op. at \*10; *Kroetz*, unpub. op. at \*5–6; *see also* Article 53a(a)(1)(B); R.C.M. 705(b)(2)(E), (d)(1)(D); *United States v. Rivero*, 82 M.J. 629, 633–34 (N.M. Ct. Crim. App. 2022) (finding that the requirement of a specific sentence in the plea agreement that included adjudgment of a dishonorable discharge did not render the sentencing proceedings an "empty ritual").

Nor is there a factual basis in the record that demonstrates that Appellant's sentencing proceeding was transformed into an "empty ritual." The plea agreement here did not limit Appellant from presenting matters in mitigation or extenuation. To the contrary, Appellant presented sentencing evidence on his behalf, including a lengthy slideshow outlining his life and experiences as a father, character statements, witnesses, and a written and verbal unsworn statement. Despite the limitations in the pretrial agreement, the military judge had a range of options available to determine a punishment that was "sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces" pursuant to her obligations under Article 56(c), UCMJ, 10 U.S.C. § 856(c) (*Manual for Courts-Martial*, United States (2019 ed.) (2019 *MCM*). Notably, despite the Government's specific recommendation of a sentence of 30 days of confinement and total forfeitures of pay and allowances, the military judge sentenced Appellant to only 11 days of confinement and did not impose any forfeitures. Thus, there is no indication that the military judge was stripped of her discretion as the sentencing authority by the mandatory discharge provision of the plea agreement.

In sum, Appellant's plea agreement term requiring a bad-conduct discharge was not prohibited by public policy, it did not deprive Appellant of his opportunity to secure a fair and just sentence, and the record reflects that Appellant was afforded full opportunity to present matters in mitigation or extenuation. Therefore, no relief is warranted.

**B. Sentence Severity**

**1. Law**

This court reviews issues of sentence appropriateness de novo. *United States v. McAlhaney*, 83 M.J. 164, 167 (C.A.A.F. 2023) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)). Our authority "reflects the unique history and attributes of the military justice system, [and] includes . . . considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only so much of the sentence as we find correct in law and fact. Article 66(d), UCMJ, 10 U.S.C. § 866(d).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of

service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals are empowered to "do justice," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (citation omitted). While we have significant discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *See United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010).

"Absent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979)). When considering the appropriateness of a sentence, courts may consider the limits, or lack thereof, that a plea agreement, to which an appellant agreed, placed on the sentence that could be imposed. *See United States v. Fields*, 74 M.J. 619, 625–26 (A.F. Ct. Crim. App. 2015).

The maximum punishment at a general court-martial for a violation of Article 128, UCMJ, assault consummated by a battery upon an immediate family member, is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for two years. 2019 *MCM*, pt. IV, ¶ 77.d.(2)(f).

### 2. Analysis

Appellant argues that the imposition of a bad-conduct discharge is inappropriately severe for conviction of a single specification of pulling YC's wrist, characterizing his actions as a "simple arm grab." As support, he cites to his apologies at his court-martial and his acceptance of responsibility of his actions.

Appellant's offense was serious and warrants the adjudged punishment in this case of a bad-conduct discharge, confinement for 11 days, reduction to E-1, and a reprimand. As admitted by Appellant in the stipulation of fact, he caused injury to YC by grabbing her wrist severely enough for her to believe that it had been "pulled from its socket." YC attempted to "mend" her own wrist by putting it back in the socket by herself. Appellant then chose not to take her to seek medical attention for her injury despite YC specifically informing him of her pain and requesting medical treatment. Thus, Appellant's characterization of the seriousness of his actions as a "simple arm grab" is not accurate. In addition, YC explained in her victim impact statement how Appellant's actions negatively impacted her physically and emotionally.

After conducting a review of the entire record, we find Appellant's sentence is appropriate. We have considered Appellant's entire record of service, and all matters contained in the record, including Appellant's EPRs, record of counseling, LOR, and prior court-martial conviction for violations of Article 128,

UCMJ, for assaulting another Airman. We have also considered that Appellant pleaded guilty, that he expressed remorse before the military judge and to YC, and that he presented evidence of his life, military duty, and rehabilitation potential. Considering the nature of the offense, Appellant's particular circumstances, and all the matters he submitted in extenuation and mitigation, we do not find Appellant's sentence, to include the bad-conduct discharge, to be inappropriately severe.

### III. CONCLUSION

As entered, the findings are correct in law, and the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. *See* Articles 59(a), 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court